Good morning. The first case is Hoem v. Taylor. And Mr. Magner, are you ready to proceed? Please do so. May it please the court, counsel, my name is Thomas Magner and I represent Brenda Taylor. This is a rather run-of-the-mill brief contract case for real estate, but for the fact that there is no contract. The record in this case indicates that my client, Brenda Taylor, used to work for the late father of the plaintiff, Ms. Hoem, taking care of her late mother. Ultimately, and the record is silent on how this actually happened, my client's mother ended up owning the property. The deeds indicate that the property was transferred, according to the signature of the estate of Mr. Merz, the decedent, for some amount of consideration less than $100 per transaction. Thereafter, the record is clear that my client's mother then transferred the property to my client, Brenda Taylor. So, the record is clear. Ultimately, my client, Brenda Taylor, owns these two pieces of property in question. Susan Hoem, the executrix of Mr. Merz's estate, brought suit for $40,000 against my client, allegedly for breach of contract. No contract has ever been entered into evidence in this case. The evidence in this case shows that whenever the transaction from Mr. Merz to my client's mother took place, Ms. Hoem, the only witness put on the plaintiff's case in chief of trial, conceded rather handily, that she doesn't know what took place at the transaction because she wasn't there. A citation is made in my brief for the record for that question. Other than some hearsay comments that were timely objected to, and some suppositions by Ms. Hoem, and her candid admission that she doesn't know what took place at the time of the transaction, the only evidence in the record in this case is that these two deeds with a real estate tax affidavit stamp on it saying that whatever the consideration was, was less than $100 per piece of property. That's the only evidence in the record as to what the deal was between whoever the parties to the original transaction were and Mr. Merz. Again, in the original transaction, nothing was conveyed to my client. Brenda Taylor acquired the property from her mother. At the close of the plaintiff's case in chief, the defendant moved for a finding of no liability pursuant to Section 5-2-110 of the Code of Civil Procedure on the basis that there is no evidence in the record of any transaction or contract between my client and the plaintiff. This is a breach of contract case, not any sort of equitable trust case or any fraudulent conveyance case. It's a breach of contract case for real estate, and there's no signed real estate contract or even proposed real estate contract in the record. Circuit Court denied the motion for judgment under Section 110 and ultimately awarded $40,000 against my client Brenda Taylor in favor of the plaintiffs. The problem with the Circuit Court's denial of the motion for judgment and awarding $40,000 is there's no evidence of any contract between Brenda Taylor and the plaintiffs. There may be a contract between the plaintiff and Brenda Taylor's mother, who Mr. Merz transferred the property to, but there's nothing between Brenda Taylor. They've got the wrong defendant. Counsel for the plaintiff argues and argued to the trial court that the deal really was between Brenda Taylor and Mr. Merz. Well, there's two problems with that. Both relate, excluding the lack of any evidence, statute of frauds. Under the statute of frauds, there's two sections. One simply says any contract for real estate to be enforceable must be signed by the party against whom enforcement is sought, assuming that the argument is that there was a contract, which that is their argument, and that Ms. Taylor, Brenda Taylor, was the party against whom enforcement was sought. No written contract signed by Ms. Taylor is introduced into evidence. But then their argument shifts to, well, she promised to pay for the transaction. That's another portion of the statute of frauds. A contract promised to pay the debts of another, such as Brenda Taylor's mother's debts, again, under the statute of frauds, must be in writing signed by the party against whom enforcement is sought. Neither of those two things happen. In their brief, the plaintiff's raised, well, you waived your Section 110 defense because you put on evidence in your case in chief. And that is what Section 110 of the actual statute says. However, if you look at the record, and this is mentioned and cited too in the reply brief, the only reason Brenda Taylor testified against anything at that trial in her quote-unquote case in chief is because she was ordered to by the circuit court. The record is quite clear. Brenda Taylor did not intend to testify in that case until ordered to by the court. Was she called as a court's witness? Was there anything that directly said, I'm calling you as a court's witness? No. The record is clear that when the trial started, Brenda Taylor wasn't even in the courtroom. And that the court ordered her attorney, Meade, to telephone Ms. Taylor and bring her there so that she could testify as to this informal, apocryphal petition that the plaintiff's counsel had filed a motion related to. And when inquired, and this is all in the brief and in the record, when it was inquired to the court, well, do you want to do this as a separate matter, or how do you want to handle this? The court advised that two case management conferences previous to the trial, it had decided it wanted it done as part of the evidence of the trial. So all that was being done when Brenda Taylor testified in her, quote, unquote, case in chief was complying with the court order that she address a motion. If you look at the actual testimony, it directly relates to the plaintiff's motion related to the informal apocryphal, excluding the cross-examination by plaintiff's counsel. Let me ask you a question about that just so I'll understand. So what you're saying is, and you are the trial counsel? I am the trial counsel. I heard on the day of trial. So while she was on the stand, did you ask any questions or induce any evidence whatsoever that would have gone to your defense? I didn't. In direct answer to your question, I did not intend to do so. I don't believe I did. But the informal apocryphal petition motion is so closely related to the merits of the case, there has to be some crossover. But in direct answer, it was not our intent to do so. Okay. But you can ask, as she explained, she borrowed $30,000 from her grandmother, and then she paid it to the deceased or the eventual deceased, and then there was $10,000 still owed on the contract. That all came out in your direct. I believe that was in the cross-examination. If it came out in your direct, it would go to your heart of the earth. If that came out in the direct, that would. Well, not necessarily, because the issue on the informal apocryphal petition was whether or not my client had any equity in this property that she owned. If she owed money to her grandmother, that goes directly to whether or not she had any equity. Okay. Let me ask a question then. Was there any offer of that evidence for a limited purpose? Did you see what I'm saying? In other words, did you say, Judge, I'm only offering this for the limited purpose of the informal apocryphal petition? As you phrased the question, no. But I would note that there were no additional witnesses called, that the court directed that the witness appear and testify and address this, and that the testimony that was presented was directly as ordered by the circuit court. In reading your reply brief, I got the general impression that your client felt she would be held in contempt if she did not testify. Is that what you were trying to convey to us, or am I wrong? Well, I think any party has an obligation to comply with the court's order, and if they don't do so, then absolutely there is a risk of being held in contempt of court. Well, did Judge Chapman ever convey that thought to you, that, I mean, expressly? He seems to be pretty clear cut in the record, and in his past performances, he's pretty clear on what he expects. He didn't say, if your client doesn't appear, she'll be held in contempt. Judge Chapman never used the word contempt, per my recollection in the record, but Judge Chapman was also very clear that he expected Brenda Taylor to be there and testify, and I would not want to tempt the fates, as it were. Fair answer. Unless your honors have any further questions, I would ask that you reverse the adjudgment in favor of the plaintiffs. Thank you very much. Thank you, Mr. May. And is Mr. Slate? Thank you, your honor. Please accord, counsel. I represent the plaintiff, Susan Holm. Susan is the executor of her father's estate. Her father was Clyde Mertz. Susan is also a beneficiary of the estate. Clyde, as counsel informed the court, had retained Brenda Taylor to care for his wife, who was separated from Alzheimer's disease. Brenda did a good job of looking after Clyde's wife, and Clyde offered to convey two rental properties to Brenda for the sum of $40,000. Brenda accepted the offer, stipulating, however, she wanted them conveyed to her grandmother. It wasn't her mother. It was her grandmother, Mabel Barrow, who would then, at some future date, convey them to Brenda. And this was done. Clyde conveyed the properties to Mabel Barrow, who later conveyed the properties to Brenda Taylor. The deeds by which Clyde conveyed the property to the defendant were prepared by the defendant. They state on the bottom of this deed, prepared by Brenda Taylor. Those were the deeds that went to the grandmother? I'm sorry. The deeds were to the grandmother, but prepared by Brenda Taylor. I believe that's the case, Judge, but I have to go back and look at those exhibits again. But I believe they were. The defendant claims that this court should review the trial court decision de novo, that the appellate court should reverse, because the denial of the deed by the defendant motion under section 2-1110 of the Civil Practice Act, and that the statute of frauds prevents the plaintiff from recovery. The standard of review in this case is not de novo. The standard review in this case is, was the trial judge's decision contrary to the manifest weight of the evidence? De novo review is appropriate only where there is a mere question of lawful review, but whereas in this case the trial court has heard the witnesses, has observed their demeanor, has measured their credibility, has examined and ruled on exhibits, the standard review is manifest weight. And the reason for that, of course, Mrs. Courtwell knows. The trial judge had the advantage of seeing and hearing these witnesses, and it's much easier for him to evaluate the credibility than it is for one who is merely reading a transcript. However, I think that the transcript in this evidence does lend a large measure of doubt to the credibility of the defendant. She changes her story frequently and often. Susan was not present when the contract was signed, but Susan engaged in extended conversations and negotiations with Brenda after her father died and after Susan was the executive. And there was a lot of testimony about this, and I believe it carried a lot of weight with the judge, because of Susan's attempt to try to resolve this matter, and because of Brenda Taylor's stonewalling and changing her story from time to time, there was testimony that she had said that her grandmother paid $25,000 for the property. But when it came to trial, she said, no, she, Susan, had paid $30,000 for the property, but it was her grandfather's money. It's understandable, given the testimony in this case, and given the trial judge's opportunity to examine, to hear, to listen to the witnesses, that the court reached a decision that it did. And the trial court decision should be affirmed unless arbitrary, unreasonable, or not based on the evidence. And clearly, that is not the case here. The trial court heard, weighed the evidence, and reached a decision consistent with it and supported by the record. The motion of the defendant under Civil Practice Act 5-2-1110 was properly denied. It was properly denied because the plaintiff had made a primary patient case. The plaintiff had offered evidence that there was an agreement between the plaintiff and defendant, offering acceptance, supported by consideration, full performance by the plaintiff, breach by the defendant, and damages. The evidence of a primary patient case. Whether it was in writing or not becomes an issue if the statute of frauds applies. If the statute of frauds is not an element, then there's no question there was a contract and there was breach and damage. Did the defendant waive her motion? I went through the record and took a look at it, and there are at least seven statements which indicate that the defendant was presenting a case in chief. The first appears on page 54 at line 11, where counsel for defendant said, We will now present my case in chief. Not limiting it to issue in form of properties, but rather referring to it as my case in chief. Thereafter, the defendant, Brenda Taylor, said that she had borrowed $30,000 from her grandmother to pay Mr. Mertz, and that she had, in fact, paid it to Mr. Mertz. She acknowledged that the agreement of sale was for $40,000 and had a balance due of $10,000. Two pages later, she said, I paid some on the house. The next page, she said, I told the plaintiff I paid on the houses. She also said on page 60, I did not owe that much. Yes, she said I did not owe that much. She said on page 61, I told you I had paid on them, and on 62, she said that they didn't have a written agreement because the city ordinances, the grant seeing ordinances would have prevented her from renting the property if there was a debt to show. I ask you this, the contract, the oral contract you're trying to enforce, what are the terms of it? The terms are, I, Clyde Mertz, will convey two properties to you for $40,000. To you? Who's you? You is Brenda Taylor. And Brenda Taylor says, please convey them instead to my grandmother, Mary Farrell. So the contract is for $40,000, I'll convey two, and the contract's between Brenda and the deceased. Yes. And it's $40,000 to convey two pieces of property to her grandmother. Yes. Okay. Which Clyde did. Okay. And the disputed factual issues in this case, what do you think those are? I'm sorry? The disputed factual issues. Are the terms of the contract or what was paid or what? The dispute is what was paid. Okay. Did Brenda pay anything, and if so, what? Okay. At one time she said $25,000, another time she said $30,000. She acknowledged that she owed $10,000. What takes us out of the statute of frauds? The conveyance. Paragraph 8 of the statute of frauds says that if a conveyance has occurred for good consideration, bona fide conveyance for good consideration, the statute of frauds does not apply. Section 80-8 of Chapter 740. I'm going to compile the statutes. Statute of frauds does not apply because by its terms it does not apply. And that is true whether the criticism is based, whether the objection is lied to on the basis of lack of a written contract or whether it is based on the promise to answer for the debt of another. The answer for a debt of another is clearly a red herring. Nobody ever intended or expected Mabel Barrow to pay Clyde Mertz for these properties. The sale was to Brenda. Brenda said it conveyed to my grandmother and I'll pay. That was the deal. And Clyde did his part. And under the terms of the statute, the statute of frauds does not bar enforcement of disagreement. Furthermore, if Brenda is permitted to assert the statute of frauds, by doing so, she will in fact have perpetrated a fraud. Because the property has been conveyed. Full performance by the plaintiff would take the case out of the statute of frauds, whether by reason of a deed or other performance. In this case, we have a deed and we have performance, both aspects. The common law rule full performance takes out of the statute would apply. The statute itself, by its terms, takes the case out of the statute of frauds. So there is no real statute of frauds issue here. Defendant makes the argument that the consideration was less than $100 because the deed says it was less than $100. At least since 1853, it's been the law in Illinois that a statement of nominal consideration in a deed is not binding. The statement of nominal consideration prevents the grantor from disclaiming or invalidating the deed, but does not prevent the grantor from proving the real consideration. What about the revenue declaration? Was that introduced into evidence as well? That was a part of the work of Brenda Taylor. It also showed $100 consideration too, didn't it? It did. Isn't there a problem there? Well, it's as much a problem, I think, as Brenda's statement that she had paid for the property. Clyde paid. Clyde conveyed. Clyde did not get paid. Extended negotiations, which were presented to the court, where Susan tried to get Brenda to make good, either on an extended payment basis, without interest, anything, to try to resolve this, and Brenda didn't. And the court had that information before. So unless the court has questions, I thank the court for your time. I believe that reviewing this case by the appropriate standard was the decision, contrary to the manifest weight of the evidence. It is easy for the court to decide it was not. The decision was compatible with the evidence. The court weighed it properly and decided properly. We request this court to affirm the trial court decision. Thank you. Thank you. Mr. May? Thank you, Your Honor. Very briefly, the standard of review in this case of what sought to be reviewed is de novo. We're not asking for a wave of credibility or anything like that. We're asking for the first prong of the 5-2-111 test. As explained in Conis v. Cottridge, which is cited in the brief, whether or not a primal patient case has been satisfied, we're not appealing based on the second prong. I would also note that while counsel has argued with this court that this client had extensive negotiations to try to resolve this, and that's where she obtained her information about this case, you'll note, if you look at the record, that one of the counts of the case originally sought attorney's fees for my client's malicious refusal to negotiate and talk with counsel's client about trying to resolve this. If my client is maliciously refusing to negotiate with his client, I don't see how it could be plausible that his client could have obtained all sorts of information by negotiating with my client. Other than that, unless Your Honors have any other questions, I would ask that you reverse the judgment. Thank you. Thanks, both of you, for your arguments. We'll provide you with a decision on the earliest possible date. Thank you.